May it please the Court, Siri Shetty on behalf of Appellant Ralph Frederick Whittington. Mr. Whittington's convictions for aiding and abetting the transportation and bring-to of certain illegal aliens to the United States should be reversed because there is insufficient evidence that a principal committed the underlying substantive crimes. It is clear that the crime of transportation can be committed only after the aliens have arrived in the United States. And there was simply no evidence that anybody, Mr. Whittington or anybody else, transported those aliens within the United States. The reason I smile is because you may not know, but this is the pattern now. You point to the border, you drive them within a certain distance of the border, and you point. So if we buy your argument, the game is over. All you've got to do is just don't drive them across. And I was smiling because you know, I know from this record, that he was transported. He just didn't cross the border.  Well, there are six charges here, two from the same provision, transportation and the bring-to. With transportation, what is required is that the entry of the aliens and then transporting them within the United States by means of transportation or otherwise. Now, there's no evidence that Mr. Whittington drove the aliens in the United States. Arguably, he could have been charged with attempted transportation, but that is not what the government chose to charge. They charged aiding and abetting transportation, and that crime simply didn't occur. The individuals in Mexico who pointed them towards the United States did not accompany them to the United States. And it's not possible to have transportation until after the aliens arrive and are moved by an individual. We have a case that we're deciding what constitutes transportation, which may bear on this that's in the pipeline. But I think what maybe Judge Ferris is getting to is the bring-to. I mean, your argument seems to be that if someone just points, they're get-off-scot-free. No transportation, no bringing-to, and so forth. If you aid and abet someone who is pointing toward the border, isn't that enough? That could be encouraging or inducing. There is a provision in 1324 that punishes that. In addition, it could be conspiracy. But the statute punishes bringing to the United States at a place other than a designated port of entry. In Gonzales-Torres and Munoz, they discussed the change in language from bring-into to bring-to. And Congress intended to eliminate the official restraint doctrine as a defense. So the legal definition of entry wouldn't be used, because bring-to implied a legal definition of entry. There's nothing about this change that suggests that presence in the United States or physical accompaniment in the United States was somehow eliminated. I believe I submitted a supplemental citation of a case from 1933 under a predecessor statute where the conspiracy charges were upheld on sufficiency grounds, but the attempted entry under the aiding and abetting was reversed because of insufficient evidence that there are principals who had actually committed a crime. Hypothetically, if someone brought an alien literally to the border at some point that was not a checkpoint, said, okay, I'm stopping here, okay, you take the five feet across, not this crime, it's not bringing. The definition of bring would seem to imply something more than encouraging. If you go to the United States and they bring you right up to the border and they say, okay, I'm not stepping across that line, you go across the line, then the crime is not committed. I mean, here we have a distance, you know, they point and say, there's the truck over there. But you would say that in another, say it was along the border somewhere in the middle of nowhere, as long as that person just kind of brings them right up to the border and says, okay, I'm stopping here, you take the step across the border and there's the truck over there, the crime is not committed. The crime of bring two or aiding and abetting the bring two, perhaps not. Perhaps conspiracy, perhaps encouraging and inducing. Does that make any sense? To say that if you walk up to this line where the border is and say, okay, you step across, I'm not going to do it. You haven't brought them to the United States. It's not bringing? Well, given that the statute and the language suggests that presence on the United States, that that is required for the crime to be committed, yes. In this case, it's unclear as to the exact demarcation of the border. There's no question as far as I didn't get a five-minute or several-minute walk. I understand that. But I'm just trying to see how far the argument goes, how close they can get. Is there a line of demarcation if you're two feet from the border at some point and you're able to tell someone, okay, you climb the fence, I'm not going over. The crime of bringing to the United States is not committed by your theory, correct? Correct. Based on the language of the statute. The case that this court has decided the definition of bring is Yoshida. And in that case, there was encouraging and inducing charges as well as the bring to. And the evidence cited to support the encouraging and inducing was walking them to the airplane while the bring to was walking them to the airplane plus accompanying them on the flight. But in Yoshida, we said, or the court said, bringing is conveying, leaving, carrying, or otherwise causing an individual to come from one place to another. So if you bring them to the border and you say, go across the border, there's the truck, are you not causing them? Causing to come along. And then part of that definition is also to accompany or escort, which implies some sort of physical accompaniment. And in Gonzales? Don't they use the disjunctive? I mean, I'm quoting from Yoshida. Bringing an alien to the United States would include leading, escorting, or causing the alien to come along. It's in the disjunctive, isn't it? So any of those? It is, but I understand the words after that are to accompany or escort. And causing to come along also implies some sort of physical accompaniment. Why is it automatically physical accompaniment across the border in terms of that definition of causing? I mean, it's clear that the change in Congress from bring in to to bring to certainly suggests that there has been some change in some broadening of the liability. And doesn't it make sense when you have, as was pointed out by Judge Thomas in the disjunctive here, that it would make no sense to say if you bring them to the border and cause them to go across that you're not, you don't come under the definition. I'm just having some problems with that. Well, speaking to the broadening of liability, Congress in the legislative history that's cited in Munoz and Gonzales-Torres, they were concerned with the Mario Boatlift, where U.S. immigration officers were inundated at ports of entry, and immigration officers were inundated with people, and they were held not to be smuggling or held liable for smuggling because they were under official restraint. The fact that the language of the statute includes at a place other than a designated port of entry seems to imply a presence on U.S. soil, and that at the very least, as in Gonzales-Torres, there has to be guiding or leading or causing to come along within the United States. If I bring you to the border and I say, there's the truck, you know, 10 feet away, go get in that truck, it'll take you to El Centro, which was the issue, isn't that leading? I don't understand why that's not bringing to leading, causing, et cetera. You say leading, does it have to be hold their hand and bring them across the border? I'm not sure that that's absolutely the test. Well, it's the position that the bring has to be the leading within the United States, based on the language of the statute. Even if pointing across the border can sustain a bring-to conviction, there's one count, count one, where the material witness testified that he wasn't guided across, there was no evidence that he was pointed across. The deposition testimony merely established that he was someone who was illegal. He crossed through a fence, unlike the other two individuals. He stated that he had not made any prior arrangements to cross. But didn't he talk about a thousand dollars later that he was going to pay? He was asked about a thousand dollars to be transported into the United States, and that was on page 20. There was no additional clarification as to whether that meant, because he indicated he would pay when he reached his destination. There was no clarification, again, no question asked to clarify, well, were those arrangements, were those plans, were those discussions made before you crossed? Because the first question that was posed to him prior to that were, were any arrangements made in Mexico prior to crossing into the United States? And he indicated no. And so there's insufficient evidence as to that count, that he was part of some prearranged plan to be brought to the United States, no indication that he was directed or guided in Mexico or in the United States. And so there's insufficient evidence as to that count. So you're saying the court shouldn't have considered that statement, which seems inconsistent with his other position, at least somewhat, that he wasn't part of anything, that he was going to pay a thousand dollars. The court should not have considered that, or the prior facts should not have considered that? Well, his statement about paying a thousand dollars to reach his destination was, it could arguably support that idea, but given his prior denial of any prior arrangements and the evidence indicating that he might have gone in a different group, and the evidence from the agent saying that that's an area of high alien smuggling activity, he's apprehended people who've separated from their original group and joined other groups, he's apprehended people who've gotten lost, there was not enough evidence to support a connection between this, the Matwit named in count one, and any prearranged plan to Mr. Whittington. Thank you, counsel. Thank you. We'll hear from the government. May it please the court, Steve Miller for the United States. Defendant's argument here asks this court to walk a semantical tightrope that defines common sense and defines prior established precedent. I think the crux of this issue has to go with the authority to have extraterritorial liability for alien smuggling, and in this case, people's extraterritorial actions constitute violations of the United States smuggling laws, and that when people aid and abet, assist those people whose goal is to smuggle the aliens and make a lot of money, that there is no question in this case that the defendant would have aid and abetted the brain tube and the transportation. It would actually defeat the deterrence purpose of the entire statute to say that when defendants and such a well-organized alien smuggling organization makes deliberate and calculated efforts to disassociate themselves with criminal liability, as you pointed out, the pattern of go forth and get into that box of wood, that it's rewarding these efforts and that there should be no immunity for those who are willing to assist these people for profit. The idea behind the statute is that if you take away the profit, the reason that people would want to commit this crime, that then fewer people will commit it, and then to say that if you're going to pay someone to assist you in a very important part, which was to conceal them near the border and then transport them, defies common sense, as I said. I was frantically scrambling when counsel argued that the Yoshida case said, well, the inducing said this, and then the brain tube did not include the extraterritorial conduct. I thought that I had addressed that in my brief and I found it. On 1152, the court said that by leading them, the aliens, to the gate and assisting them in boarding the aircraft, that she brought them to the United States. I confess to you that when I received counsel's 28-J letter citing Yankechi Ito, I was kicking myself. How could I possibly have missed that case? Well, there was a good reason that I missed that case because it had been referenced in the other authorities that I cited regarding extraterritorial jurisdiction to enforce United States smuggling laws. It said that it had, in effect, been overturned because the language there was bring into the United States and the land. So in the context that you had to have the criminal liability, you had to have the action of landing, and then the interpretation of bring into would be the physical bring into. How do you deal with the argument as to count one that Tolentino, there's no evidence that Tolentino had any arrangement with Tolentino beforehand. I mean, it's sort of like what we call a party crasher. Correct. But the standard for this post-trial was the evidence most favorable to the government. And in this case, that the reasonable deduction, even though he may have said that I crashed it, that if you're talking about such a well-organized alien smuggling machine, it's a machine, and that for him to say, well, I was going to pay them $1,000 once I got to where I was going, the reasonable deduction in the light most favorable to the government is that he knew where he was going to be going. And if you're going to be put in a box of two-by-fours, then he probably would not have got into that box unless he knew where he was going, where he would eventually have to pay the $1,000. But also – That's not clear. The $1,000 was – he said $1,200. Correct. He came over that $1,000, as counsel points out, in sort of one extraneous comment. But other than that, he was pretty consistent that – Yes. He was a tag-along. I mean, he just saw this going on, jumped in, and figured, hey, this looks good. I'm going to go along. He's saying in the face of all of his testimony that he really wasn't previously a part of this scheme. And I think he said something to the effect, and I may be incorrect on this, that he was anticipating or thought he was going to pay or thought someone said $1,000. Is the count really made out against him? In the light most favorable to the government, I believe so, because it would make no sense if he was a party crasher. I mean, this is not about some guy who hid in the bushes, and then once everybody loaded into the box that he then grabbed onto the spare tire and rode along. No, he said there's room in the box. Come on in. Right, right. I mean, what – you say the inference is to be drawn otherwise, but it seems to me – I don't see anything illogical about his testimony, particularly. I mean, he had room. He got in. Certainly. But – And there's no evidence to show that Fenton knew anything about it. But in the context of once I get to where I'm going, well, how did he know where he was going that it would make no sense? Well, he was going over the border. I mean, there's no doubt about that. He wasn't getting in a box to go joyriding in Mexico. I don't think he much cared where he was going as long as he was on this side of the border. And then how would he have known that he was to pay $1,000? Well, of course, he was supposed to pay somebody $1,000, but he sees this opportunity and gets in. I mean, I grant you that we have to draw inferences in your favor, but I don't think it's as clear as you seem to think. Well, certainly, but that's why the – if you can reach the deductions. If it's a reasonable inference. Is it clear who he was going to pay the $1,000, that the defendant here knew anything about his $1,000 or knew anything about his being part of the deal ahead of time? No, but there's no evidence that the defendant knew about that. He may have anticipated it to be $1,000 or so to somebody, but the defendant may not have known that. Well, certainly. It just stuck him in the box. But, again, you shouldn't reward the deliberate and calculated efforts to disassociate yourself. I mean, he was an employee. Hey, you want to make $1,000? Sure. All you've got to do is drive this truck and load the aliens in that box. Thank you. All he knows is that that box is going to the 7-Eleven. So even though he has – the defendant has specific knowledge that Diane, McGill, Julio are providing him with all these cars and that all he knows is that someone called him on the cell phone when he's driving along the road and said, I see you stop, that it would be unreasonable to require him to know what Mr. Tolentino was going to be paying. It's unreasonable for him to know what the other people were paying. But he knows that he was making profit and that because of the circumstances of the organization and being called on the cell phone and how well coordinated it was. Let me turn to a different topic because your time is running out. I find it difficult to understand how the transportation offense is any different from the bringing to offense in this context. It looks to me as though you charged on the same conduct. Yes. So you think the crimes are identical? You can charge people for the same – I mean, the district court said transportation doesn't require movement by vehicle. It says the defendant can be convicted if he's ready, willing and able to transport them, which I don't think is the law. I find it difficult. I mean, they're two separate crimes and there was no transporting here. You're basing it on the bringing to conduct, it looks to me. Well, for transportation, as they say, transport or otherwise, also includes the transportation by causing the aliens to move under their own power. That was the main thrust of my closing argument at trial. And it would make no sense to have the extraterritorial action of someone to cause the aliens to transport themselves under their own power to meet the defendant at the truck. But also – When does the crime of bringing to stop and the crime of transporting begin? Well, the bringing to would be up to the border. I mean, the similar analogy would be if you had fraud cases where you said more than a million dollars, someone stole a million dollars and it wasn't quite over, but you have a million or more, that's – Right. So you would agree, though. I mean, you have to – there's a point at which the bringing to stops. Yes. And the transporting starts. Correct. And in your brief, you argue that continues – the crime of bringing to continues until the immediate destination. That's the issue in another case. But they didn't get there. So it seems to me the transportation count has to fall. Well, the – there should be no functional difference between someone causing the aliens to walk on their own, be it across the border or in the United States, by guiding them, be it the person acting on the Mexican side or the United States side. He ordered them, the aliens walked, that should be the transportation. But in the alternative – That doesn't make – If someone were a guide and were to wave them and then direct them, and then that qualifies as transportation. In this case, the defendant also – Isn't that just bringing? That's just bringing. Oh. But in this case, the defendant – Here's where I'm having the same problem, I think, is they're 100 yards from the border. Someone points. That may be bringing. But – and if they guide – maybe it's transportation if you actually take the hands and you're walking with them and you guide them across. But if you tell them, okay, look, here's – there's where it is. Go that way. There's the truck. It may be bringing, but how is it transporting? They're transporting themselves across the border. Yeah. Which way to go. Yes. But I think that, well, the – for we have the distinction between the bringing to and the transportation is the crossing by the aliens. And the aliens must be in the United States. But they're transporting themselves if you – Yeah, exactly. But they're not – he hasn't – the defendant's not transporting – not taking him anywhere. Yes. Also in the record – Your last statement seemed to collapse. Bringing and transporting is essentially being the same crime. Right. There is no distinction. So you're saying automatically, if you're bringing, you're automatically transporting, that there is no difference in the elements between the two. Correct? Is that what you're saying? No, I'm not saying that. Then what is the difference? You can be liable by bringing them to the border, and then for transportation, the aliens must be in the United States. They have to be moved within the United States, whereas the other one's bringing to the border. But – You know, some of your colleagues have really argued that bringing goes much farther. And that, I mean, if you're saying bringing stops at the border, you're going to have a lot of your colleagues a little irritated at you, I think. I'm not saying this completely. Don't go back to your office. I'm not saying this completely. No, but you can't have it both ways. You can't say bringing stops at the border, transporting starts at the border, and then have – say, well, bringing can include everything all the way to the first destination. Right. I mean, this is my problem. I'm not arguing. Oh, I understand that. But also, if you take a review of the record, would there be transporting if there was any direction by the defendant? I mean, he was charged as aiding and abetting a principle for the transporting. But in this case, the defendant also was at the box, directing them to get into the box. Oh, he did. Okay. So, I mean, if you're going to – We understand your argument. Transporting. Our questions have taken you over time. Thank you very much. You're welcome. Your time has expired, but I'll give you a minute for rebuttal if you'd like, because we went over time with you. Thank you. With respect to Yoshida, the evidence cited by this court in holding encouragement-inducement offense was leading them to the aircraft. The bringing offense included leading them to the aircraft in addition to accompanying them on the flight. The Ito case has not been negatively discussed in any case that I found in my research. What I think government counsel is referring to is the Aguilar case, which had held that the official restraint doctrine was applicable to alien smuggling offenses, which was undermined by the change in the bring-to, bring-into language. Let me guess. You do see a difference between transport and bringing, correct? Correct. Just a wild surmise on my part. That's correct. And transportation can only occur in the United States after the aliens have entered. The essence of the crime, of course, is knowing that the aliens have come to or entered, that you are transporting them within the United States by means of transportation or otherwise to further their illegal entry or illegal residence. And that simply didn't occur in this case. Again, arguably they could have charged attempted transportation. This is not a case where a holding would immunize people from criminal liability. There are multiple provisions under 1324 that criminalize this conduct, but the government didn't charge Mr. Whittington with anything that can be, that is a crime by charging it under aiding and abetting liability. Thank you. Thank you, counsel. The case has heard will be submitted. Thank you both for your arguments. We'll proceed to the next case on the oral argument calendar, United States v. Armenta Fiscal.
judges: Farris, Thomas, Schiavelli